[EDITOR'S NOTE: This case is unpublished as indicated by the issuing court.]
MEMORANDUM OF DECISION
The parties were married on October 2, 1976 at Southbury Connecticut. At the time of the marriage, the husband, who is the plaintiff in this action was 23 years old and the defendant wife was 20 years old. The parties have two minor children issue of their marriage, Lara Marie Caparella, born June 4, 1981 and Stacie Anne Caparella, born March 27, 1985. The parties have remained in the same marital household at 29 Sunset Road in Bethlehem, Connecticut during the pendency of this action. They have stipulated to joint custody of the minor children. The court inquired of both parties and it appears that with respect to their children, they are able to communicate. The court is able to find that joint custody is a workable and viable agreement in this matter and hence ratifies their agreement. Unlike many cases where the parties seek to end their marriage, the plaintiff and defendant seem to agree about issues surrounding their children. They are both loving and nurturing parents and did not seem to focus their dispute at all on child-related issues. Their commitment to hard work, home and family seemed to be deep-rooted for both.
As the court assessed the adult issues of their dissolution, it became regrettable that they could not reach the same concensus with respect to their marriage, i.e., how they would spend free time, and how they gave and received communication from the other. It is as if this couple, who were quite young when they married fourteen (14) years ago, have approached mid-life in turmoil.
The plaintiff claimed that the cause of the breakdown of this marriage was the wife's incessant nagging of him, her ill temper and her demands that their home and lifestyle be akin to that had by her sister.
The defendant claims that she married "forever" and that if the marriage was broken down as it appeared to be it was because of Mr. Caparella's desire to drink as a normal CT Page 2982 course of life. His use of alcohol created tense scenes at home. She claimed he made a decision to go drinking with his male friends rather than to spend time at home with her and the children.
The parties essentially agreed on many things, especially with respect to their minor children, but had vastly different ideas as to what had occurred within the course of their marriage. The defendant further seeks an award of alimony in this case, to which the plaintiff objects.
 I
The plaintiff is currently 39 years old and is a skilled toolmaker. After graduating from high school, he received certain technical training at Kaynor Technical School in Waterbury and has been well employed through the course of the marriage. He is in good health. The plaintiff had minor surgery during the marriage, of a non-recurring nature.
The plaintiff and defendant bought and resided in a home in Oxford from after their marriage until 1986, after the birth of their second child. They then moved to Bethlehem, to the current marital home at 29 Sunset Road. The plaintiff did remodeling and refurbishing on the home, and assisted in the construction of an addition to it. The plaintiff testified, and defendant agreed, that the plaintiff was careful with money, and the equity that they had built up reflected the defendant's deferral on issues of money. While he claimed that she always wanted more material things, it is clear that his decision on major expenditures was the final one.
The plaintiff admitted that he relaxed "with the boys" in bars and taverns. He denied abuse of alcohol because he was always able to get up and go to work. The fact that he drank every day and that it affected his marriage and family life did not appear to have occurred to him. It appeared credible from the testimony and the demeanor of the parties that the plaintiff's drinking affected his mood, and while not physically violent, the plaintiff was not approachable during those times. The defendant's claim that she was afraid to bring up the issue of his drinking seemed credible.
The defendant is now thirty-five (35) years old and is in general good health. In addition to two pregnancies, one of which was by caesarian section, the defendant had a mastectomy in 1983. She is checked twice a year and has been free of a recurrence of cancer since her surgery.
Her surgery she testified left her questioning if she CT Page 2983 looked different and it was a difficult emotional adjustment. While she is positive about her health, it is an issue of concern with respect to her insurability and continued ability to work.
The defendant attended Mattatuck College after graduation from high school, and received her Associate's Degree in Accounting. In the early part of the marriage she was employed at Kerite where she developed pension benefits and had medical benefits. She ceased working after the birth of their second child at his insistence. After being home with the children she was reemployed part-time and has continued to be reemployed, now at a convenience store. During the period of the children's infancy and toddlerhood, the defendant assisted in moving the family to their new home, and maintained it. The plaintiff claimed that she was so neat that it became an issue with the builders. She admitted, grudgingly, that she disliked the mess it created in her home.
The defendant insisted during the later stages of the marriage that they see a counselor, which they did. The plaintiff stopped drinking for a short time, but remained very unhappy in the marriage. The defendant who asked plaintiff to withdraw at least one action for dissolution, did not seem to understand or hear the plaintiff's distress. He testified he felt unloved and unable in any way to make the defendant happy. She testified that marriage was "forever," but seemed unaware of how fragile their marriage was. Her claim of his increased drinking after 1985 may very well have been his way of expressing his emotions of estrangement from her.
The counseling did not resolve the issues for these people. In their testimony, they were not emotionally expressive. The plaintiff was able to communicate his pain and frustration because of the inevitable separation from his children. The fact that he was raised by his grandparents, did not know his father, and only met his mother at age twenty-seven (27) was significant. The plaintiff would benefit significantly from continued therapy so that his relationship with his female children is positive and loving. He may find that his marriage to the defendant was not the best match because of her passivity.
The court had great difficulty in understanding the claims of the parties because of the above. The couple impressed the court with the good that they had done for and with each other. They did not dwell to any great extent on negatives.
The court cannot say that either was more at fault for CT Page 2984 the breakdown of the marriage. In assessing its orders, and in keeping with the statutory criteria, the court notes the plaintiff's higher ability to be employed and provide further capital assets, while the defendant will be challenged with primary care of the children, the home, as well as her employment.
 II
The following orders are entered:
1. A decree of dissolution shall enter based on the fact that the marriage has broken down irretrievably.
2. The parties shall have joint legal custody of the minor children. The minor children shall have their primary residence with the defendant. The defendant shall have physical custody of said children. The plaintiff shall have the right of reasonable, liberal and flexible visitation with the minor children. The plaintiff shall not drink nor be under the influence of alcoholic beverages while in the presence of the minor children.
3. The plaintiff shall pay weekly child support in the amount of $187.00 and shall be responsible for 75% of the children's unreimbursed medical, dental, optical and psychological expenses.
4. The plaintiff shall pay periodic alimony in the amount of $50.00 per week to the defendant for a period of seven (7) years after which said alimony shall be reduced to $1.00 per year, modifiable only if the defendant is medically certified unable to work outside the home.
5. The defendant shall retain exclusive possession of the property located at 29 Sunset Road, Bethlehem, Connecticut until the first of the following events to occur:
a. The youngest child, Stacie, reaches the age of 18;
b. The death of either party;
c. The remarriage of the defendant;
 d. The date on which the defendant no longer wishes to use the house as her primary residence.
Upon the happening of any event specified above, the house shall be placed on the open market for sale. The parties must cooperate with any realtor selected to list and market the property and follow the CT Page 2985 reasonable recommendations of said broker regarding the listing and sale of the property. Upon the sale of the property the sales proceeds shall be divided 65% for the defendant and 35% to the plaintiff, after paying the customary expenses associated with the sale including the principle balance of the mortgage, the reasonable brokers fees, the reasonable attorneys fees, any and all taxes and customary closing costs and adjustments. The plaintiff shall be permitted to reside in the marital home for a period of thirty days from the date of this judgment so that he may find a suitable replacement residence for himself. Beginning on the date of this judgment and continuing until the house is sold and title is transferred, the defendant shall be responsible for paying all of the carrying charges associated with the house, including taxes, insurance and mortgage payments and utilities. The defendant shall also be responsible for all repairs to the house which do not exceed the sum of $100.00. All home repairs in excess of $100.00 will be paid for 65% by the wife and 35% by the husband. Before making any repairs to the house the defendant must give 30 days advance notice including the cost of the estimate to the plaintiff of the need for a repair and the defendant may have the first opportunity to make the repair himself or decline to make the repair. The plaintiff may make the repair only if the cost will be less than the defendant's estimate to make the repair. Neither party shall be permitted to further encumber or mortgage the real estate or use the real estate for security for any purpose. If either party causes the real estate to be used as a security for any debt or action then the party responsible for same shall incur all the costs to remove the security.
6. The contents of said residence shall be awarded to the defendant. The plaintiff shall be allowed to take all items on the list submitted to the court, including the family room couch and chair which shall be the property of the defendant
7. The plaintiff shall maintain all existing medical, dental and health insurance coverage as available through his employer for the minor children. Further, the plaintiff shall maintain the defendant on said existing medical, dental and health insurance coverage, or a reasonable equivalent, at his expense, for a period of three years or until the defendant obtains a job which provides her with comparable coverage, including coverage for cancer, at no cost to her, whichever is sooner.
8. The plaintiff shall maintain the Crown Life policies (2) with a $5,000.00 face value. The children shall be designated as the equal irrevocable beneficiaries thereof. The obligation to maintain these policies shall cease as each child reaches the age of eighteen (18) years.
9. The joint tax refund presently being held in escrow shall CT Page 2986 be shared equally.
10. The husband shall retain his interest in his IRA in the amount of $7,661.00 and his 401K plan of $5,323.00.
11. The defendant may have continued use of the existing equity credit line which has a borrowing limit of $20,000.00. In the event the defendant shall use said account, she shall promptly make all payments to keep said account current and not in default, and shall save and hold the plaintiff harmless therefrom.
Judgment shall enter accordingly.
DRANGINIS, JUDGE